# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNIQUE PRODUCT SOLUTIONS, LTD.,** | ) | **Case No. 5:10-CV-1912** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **HY-GRADE VALVE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Before the Court is the Motion to Intervene as of Right and for Reconsideration of the Court's February 23, 2011 order, filed by the United States of America (the "government") on March 8, 2011. (**Doc #: 19**.) For the reasons discussed, *infra*, the Court hereby **GRANTS** the government's motion to exercise its right to intervene (*Id*.), **VACATES** its February 23 order (Doc #: 18), **GRANTS** the government's motion to reconsider (Doc #: 19), and reaffirms its February 23 order **GRANTING** Defendant's Motion to Dismiss (Doc #: 12).

**I.**

Pursuant to 35 U.S.C §292(b), Plaintiff Unique Product Solutions, Ltd., on August 27, 2010, filed a complaint as a *qui tam* relator against Defendant Hy-Grade Valve, Inc. On October 26, 2010, Defendant filed a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc #: 6.) During a teleconference on November 15, 2010, the Court granted Plaintiff leave to conduct limited discovery on the issue of personal

jurisdiction, solicited briefing on the constitutionality of the *qui tam* provision of 35 U.S.C. §292, and ordered that the government be served the briefing schedule for the constitutional challenge. (Doc #: 9.) On November 16, 2010, the Court issued its Minutes Order from the November 15 teleconference, stating that "[n]o later than January 10, 2011, Defendant shall file a brief addressing the constitutionality of the statute at issue in this case." *Id*. The Minutes Order also directed that "a copy be served upon John Fargo of the United States Department of Justice." *Id*.

After receiving an extension, Defendant filed its Motion to Dismiss Plaintiff's Complaint on constitutionality grounds on January 13, 2011. (Doc #: 12.) On February 11, 2011, Plaintiff filed its response in opposition. (Doc #: 15.) The Court granted Defendant's Motion to Dismiss on February 23, 2011. (Doc #: 18.) In a footnote, the Court's order noted that under Federal Rule of Civil Procedure 5.1, the Attorney General may intervene as of right within 60 days after a party files a notice of motion raising a constitutional challenge or after the relevant court has certified a constitutional challenge, whichever is earlier, unless the court sets a later time. (*Id*. at n.2.) The Court then determined that the constitutional challenge had been certified on November 16, 2010, when the Court issued its order inviting briefing on the constitutionality of the *qui tam* statute. As a result, February 11, 2011, the deadline for Plaintiff's opposition brief, was also the government's deadline to oppose Defendant's Motion to Dismiss on constitutional grounds because it was more than sixty days after the November 16, 2010 certification of the constitutional challenge. (*Id*.)

The government has now moved to intervene as of right, arguing that the Court

incorrectly interpreted Rule 5.1.[1] The government contends that the Court's November 16, 2010 order did not certify a constitutional challenge. Rather, the government believes certification of the constitutional challenge occurred when Defendant filed its Motion to Dismiss on January 13, 2011, and filed a notice of motion raising a constitutional challenge which was served upon the government. Accordingly, the sixty-day period to intervene would expire on March 14, 2011, and had not expired when the Court issued its February 23, 2011 order granting Defendant's Motion to Dismiss. The government thus asserts that by filing the instant motion on March 8, 2011, it has exercised its right to intervene within sixty days of the constitutional challenge.

The Court reaffirms its prior determination that the constitutional challenge was certified on November 16, 2010. The government's argument that the Court's November 16 order "only ordered the Defendant to 'address' the constitutionality of the statute, not to challenge it" is unpersuasive. The Court's order solicited a constitutional challenge by the defendant to the *qui tam* statute by creating a briefing schedule for the constitutionality issue. While the order did not contain the words "certify" or "certified," its meaning was obvious and the notice to the government was clear.

Nevertheless, the Court grants the government's motion to intervene in this matter. Since November 16, when the constitutional issue was raised, the Court has sought the participation of the federal government. Even if it is untimely, the government's motion is only two weeks late. The government has expressed a formal desire to intervene in this action and the Court believes that it should be afforded the opportunity to defend the statute.

---

[1] On March 9, 2011, one day after the government filed the instant motion to intervene, Plaintiff filed a notice of appeal to the Federal Circuit Court of Appeals of the Court's February 23 order. Because Plaintiff's appeal was filed while the government's motion to intervene was pending before this Court, the Court has jurisdiction to address the government's motion.

**II.**

As a technical matter, to permit the government's intervention, the Court must vacate its February 23, 2011 order and grant the government's motion to reconsider. Upon reconsideration, however, the Court reaffirms its February 23 order, incorporates it into this order by reference, and grants Defendant's January 13, 2011 Motion to Dismiss on constitutional grounds.

The government moves the Court to reconsider its ruling that the *qui tam provision* of the False Marking Statute violates the Take Care Clause of Article II of the United States Constitution. First, the government argues that the False Marking Statute is civil, rather than criminal, enabling the government to intervene, as of right, under Fed. R. Civ. P. 24(a)(2). Second, the government claims the Court erroneously relied upon the sufficient control analysis utilized in *Morrison v. Olson*, 487 U.S. 654 (1988), because a False Marking *qui tam* relator is not an inferior officer of the government, but rather, is an assignee of a revocable interest of the United States.

The government's argument for reconsideration is premised upon its belief that the Court incorrectly characterized the False Marking Statute as criminal rather than civil. As noted by the government, whether the False Marking Statute is criminal or civil "is a topic of some controversy." (Doc #: 19 at n.8.) The Court relied upon the Federal Circuit's description of the "false marking statute [as] criminal ..., despite being punishable only with a civil fine" in defining the intent required to violate the statute. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010) citing S.Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394, 2424 (1952). The government's categorization of this statement as dicta is misguided, as the Federal Circuit's

determination of the statute's intent requirement, and therefore, the liability of the defendant, hinged on the characterization of the statute as criminal. *Id.*

The government asserts that the Federal Circuit's declaration in *Pequignot* that a "*qui tam* action is civil in form, even though it arises under a criminal statute," and its determination in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (2009), that only a preponderance of evidence is required to prove intent to deceive, brings the False Marking Statute under the purview of the Federal Rules of Civil Procedure. The government's argument highlights the confusing nature of this statute, which, arguably, can be construed as criminal, civil, or, as the government contends, a civil-criminal hybrid.

For purposes of this motion, the classification of the statute as criminal or civil is academic. As indicated in the Court's February 23 order, "[t]he Court's analysis would not change if the False Marking Statute was deemed civil as the Sixth Circuit has applied the *Morrison* 'sufficient control' analysis to a civil statute." (Doc #: 18 at n.6 (citing *United States ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032 (6th Cir. 1994.).) Thus, even if the False Marking Statute is considered to be civil or a civil-criminal hybrid governed by the Federal Rules of Civil Procedure, the Court would still find the statute unconstitutional under the *Morrison* sufficient control analysis.

The government contends that the *Morrison* sufficient control test is inapposite to this case because "a false marking case is not a 'law enforcement' case because it lacks all of the legal requisites of a criminal action ..." (Doc #: 19 at 13.) Acceptance of the government's argument would require the Court to reject the Morrison sufficient control test with respect to the *qui tam* provision of the False Marking Statute because the statute is "civil," while being

-5-

required, under *Taxpayers Against Fraud*, to apply the *Morrison* analysis to the *qui tam* provision of the False Claims Act, which is also civil. Admittedly, because the False Marking Statute is a patent statute and the Court must follow the Federal Circuit's directives on patent statutes, it is possible the Court will ultimately be placed in this situation. At this time, however, the Federal Circuit has not rejected the application of *Morrison* to the False Marking Statute. Therefore the Court believes that, because it must follow the Sixth Circuit's application of the *Morrison* analysis to the non-patent False Claims Act, consistency requires the *Morrison* analysis to apply to the False Marking Statute, as well.

Moreover, the Court's February 23 order rejected the government's argument that intervention as of right under Rule 24 of the Federal Rules of Civil Procedure sufficiently protects the government's interest. The right to intervene does not guarantee that the government will receive timely notice of a False Marking Suit such that it will be able to intervene prior to the suit settling and the government being foreclosed from bringing its own suit. Further, unlike the False Claims Act, where the government must approve any settlement whether or not it intervenes, a False Marking Statute *qui tam* relator may settle the case on her own.

Similarly, the Court's February 23 order dismissed the notion that history should serve as a basis for upholding the constitutionality of the False Marking *qui tam* provision. The fact that *qui tam* provisions have historical import in the United States has little bearing on whether this particular *qui tam* provision is constitutional. The issue in dispute is not whether all *qui tam* provisions are constitutional, but only whether the False Marking Statute *qui tam* provision is constitutional.

Finally, the Court rejects the government's argument that *Morrison* is also inapposite because a False Marking *qui tam* relator is not an inferior officer of the government. Though the Court agrees that a False Marking *qui tam* relator is not an inferior officer of the government, the Sixth Circuit has utilized the *Morrison* sufficient control analysis in a case where it found that False Claims Act *qui tam* relators are not inferior officers of the government. *Taxpayers Against Fraud*, 41 F.3d at 1041.

As the Court recited in its February 23 order, the danger of the privatization of law enforcement is greatly exacerbated by the way the False Marking Statute fine is computed. (Doc #: 18 at 14.) The defendant pays a fine of $500 per falsely marked item. This fine likely bears no relationship to the gain to the defendant or the harm to competition. If the false mark is on one million widgets that sell for $10 per widget, the defendant faces a fine of 500 million dollars for 10 million dollars in sales that likely generated much less in profit. The relator controls the settlement process and keeps half of the money. In a False Claims Act *qui tam* case, the recovery is not a fine at all, but is the actual economic harm to the United States, typically in a procurement context. One hundred percent of the recovery goes to the United States and the *qui tam* relator is eligible for a portion of the recovery, up to twenty-five percent if the government proceeds with the action and up to thirty percent if the government does not proceed with the action. 31 U.S.C. §3730(d). The case may not be settled without government approval.

### III.

For the reasons discussed, *supra*, the Court hereby **GRANTS** the government's motion to exercise its right to intervene (Doc #: 19), **VACATES** the Court's February 23 order

(Doc #: 18), and **GRANTS** the government's motion to reconsider (Doc #: 19).  Additionally, for the reasons discussed both in this memorandum of opinion and the Court's February 23 order, incorporated by reference, the Court reaffirms its February 23 order **GRANTING** Defendant's Motion to Dismiss Plaintiff's Complaint on the ground that the *qui tam provision* of 35 §U.S.C. 292(b) is unconstitutional (Doc #: 12).  Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

       **IT IS SO ORDERED.**

                                  */s/ Dan A. Polster    March 14, 2011*
                                  **Dan Aaron Polster**
                                  **United States District Judge**