UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TEXARKANA DIVISION)

| | |
|---|---|
| GHJ HOLDINGS, LLC<br><br>  Relator,<br><br> vs.<br><br>PENTAIR RESIDENTIAL FILTRATION, LLC AND PURCELL MURRAY BUILDER SALES COMPANY, INC.,<br><br>  Defendants. | Case No.: 5:11-cv-00035<br><br>**JURY TRIAL DEMANDED** |

**GHJ HOLDINGS, LLC'S
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

**I.
INTRODUCTION**

Relator GHJ Holdings, LLC asks the Court to deny Defendants motion to transfer (Dkt. 5). Defendants have failed to show that the Northern District of Illinois is "clearly more convenient" than the Eastern District of Texas. Defendants' position that GHJ Holding's choice of venue should be given little consideration offends the policy of 35 U.S.C. §292, which is to allow "any person" to bring a claim under its provisions. Weighing the factors relevant in deciding a motion to transfer venue, the scale is neutral and does not "clearly" point toward the Northern District of Illinois.

1

## II.
### BACKGROUND

GHJ Holdings is a Texas limited liability company with its principal place of business in Texarkana, Texas. Defendant Pentair Residential Filtration ("Pentair Residential") is a Delaware limited liability company with its principal place of business in Milwaukee, Wisconsin. Pentair Filtration Solutions ("Pentair Filtration") is an Illinois limited liability company with its principal place of business in Golden Valley, Minnesota. Purcell Murray Builder Sales Company, Inc. ("Purcell") is a California company with its principal place of business in Brisbane, California.[1]

This lawsuit involves two sets of products—those under Everpure's® commercial product line and those under Everpure's® residential product line. According to Everpure's® website, Everpure® Water Filter Model No. QL2-OW200L is a commercial product and Everpure® Cartridge Model Nos. H-54, H-104, H-300, and SPA-400 are residential products.[2] *See* Everpure® website, *at* http://www.everpure.com (last accessed 4/1/2011).

---

[1] Defendants allege that Purcell is not involved in the marking of the offending products. Plaintiff is currently researching this allegation, and will dismiss Purcell from this lawsuit if Purcell is not involved in the marking of the offending products. To give Defendants the benefit of the doubt, Plaintiff will focus on Defendant Pentair Residential and address how even if Pentair Residential were the only Defendant to this lawsuit, the Northern District of Illinois is not clearly a more convenient forum.

[2] Cartridge Model No. H-50 could not be located on the Everpure® website as visited on April 1, 2011.

Although Defendants state that Pentair Residential "makes, marks and sells residential water filter products including the Pentair Cartridges" (Dkt. 5 at 2) and that "Filtration Solution owns, markets and sells Pentair commercial water filter products, including the accused Everpure Commercial System" (Dkt. 5 at 3), the product packaging, specification sheets, and installation and operation (I/O) guides refer only to Everpure, LLC.[3]

The entities under the Everpure® umbrella that are involved in the marking, advertising, distribution, and sale of the offending products are large companies with complex distribution chains spanning the entire United States and across much of the world.[4] These entities rely heavily on distributors and dealers, which is apparent when one clicks on the "Home" section of the Everpure® website and a pop-up window notifies the user to:

1. Buy directly from www.everpure.com. This is the official Everpure website for residents of the United States and Canada and the best way to ensure you are purchasing a genuine Everpure product.
2. *Buy from an authorized Everpure dealer. These dealers can be found through the dealer locator at the top of every page on www.everpure.com. Enter your zip code to receive a list of authorized dealers in your area. These trained dealers have the training, expertise, and personal service to help with your purchase.*
3. There are no Everpure Authorized internet resellers at this time.

---

[3] Everpure, LLC is no longer an entity in good standing with the Illinois Secretary of State.
[4] *See* Everpure® website *at* http://www.everpure.com/ProductResources/documents/c22feec5-f9dc-4c5a-880b-a0cde92bd778.PDF (installation and operations guide stating contact information for sales, replacement components, and service in Europe and Japan).

4. Contact Everpure at 1-800-279-9404 or by email to have an Everpure representative confirm dealer or reseller authorization.

*See* Everpure® website, *at* http://residential.everpure.com (last accessed 4/1/2011) (emphasis added). When one inputs 77505, a Texarkana zip code, into the dealer search engine, nine Texas dealers are displayed.

## III.
### ARGUMENTS AND AUTHORITIES

**A.   Legal Standards for Evaluating a Motion to Transfer**

In a recent memorandum opinion and order, Judge T. John Ward of the Eastern District of Texas explained the Fifth Circuit standard regarding a plaintiff's choice of venue and defendant's burden of proof for a motion to transfer. *Tex. Data Co., L.L.C. v. Target Brands, Inc.*, Civ. No. 2:10-cv-269-TJW, 2011 WL 98283, at *6-*9 (E.D. Tex. Jan. 12, 2011). "This Court has recognized that the burden of proof is that the movant must show 'good cause,' and this burden is satisfied when the movant shows the transferee venue is 'clearly more convenient.'" *Id*. at *7; *see also Vora v. Scottsdale Ins. Co.*, Civ. No. 2:10-cv-089-TJW, 2010 WL 3928072, at *2 (E.D. Tex. Oct. 5, 2010). "The Plaintiff's choice of venue is not an independent factor in the venue transfer analysis, but instead is represented in the movant's burden." *Id*.; *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

Contrary to Defendants' downplaying of the importance of GHJ Holding's choice of venue, Defendants must shoulder a "significant burden" to show why the case should be transferred:

> Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer. Thus, our analysis directly manifests the importance that we must give to the plaintiff's choice.

*Tex. Data Co.*, 2011 WL 98283, at *9.

Further, this Court has rebuffed the argument that no consideration should be given to a §292 relator's choice of venue: "A holding company formed to prosecute marking cases has a legitimate claim and the rules should not apply any different to them." *Id.* The Court's reasoning is strongly rooted in the congressional policy embodied in §292:

> By not giving the normal deference to the plaintiff's choice of venue, it may virtually assure that every false marking case will be litigated in the defendant's home venue. This would make it difficult for any person outside the defendant's home venue to file a false marking claim against the defendant, yet Section 292 states that "any person may sue for the penalty." Further, in this Court's view, such a result would frustrate Congress' intent to "encourage third parties to bring qui tam suits to enforce the statute."

*Id*.

When deciding whether to transfer venue, a district court balances two categories of interests: public interests and private interests. *In re Volkswagen*, 545 F.3d at 315. The public-interest factors include: "(1) the administrative difficulties

flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* Private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* No single factor is of dispositive weight. *Id.*

**B.     Application of Those Standards in This Case**

GHJ Holdings recognizes that several of the private- and public-interest factors do not point clearly in either direction, but Defendants are wrong in arguing that those factors clearly point to the Northern District of Illinois.

*1.     Administrative Difficulties Flowing from Court Congestion (Public Interest)*

There is no evidence that the Northern District of Illinois is superior to the Eastern District of Texas in this regard.

*2.     Interest in Having Localized Interests Decided at Home (Public Interest)*

Defendants' argument that most of the relevant events in issue took place in the Northern District of Illinois ignores that an important element of a §292 claim is the advertising and sale of an offending product. There are authorized

6

Everpure® dealers all across the nation, including Texas, that sell and advertise the offending products. One need only input a zip code on the Everpure® website to find these dealers.

> 3. *Familiarity of the Forum with the Law That Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws (Public Interest)*

Both courts are equally competent to interpret federal patent law.

> 4. *Relative Ease of Access to Sources of Proof (Private Interest)*

Defendants contend that the Northern District of Illinois is more convenient because several people with knowledge related to the lawsuit are located in Illinois, Wisconsin, and Minnesota. Dkt. 5. But in making that argument, Defendants concede that this factor does not point to a single forum, but instead at least three different forums in at least three different states. For example, Defendants claim that some sources of proof are located in St. Paul, Minnesota and that others are located in Hanover Park, Illinois. *See* Dkt. 5 at 11. It is not clearly more convenient to access sources of proof from St. Paul while in Hanover Park, 373 miles away, than it is to access those sources of proof from Texarkana, Texas.

Further, Defendants' argument is premature. The parties have not even exchanged disclosures yet. Defendants have no idea where all the actual witnesses and persons of knowledge of relevant facts might be located. Instead of relying on disclosures, Defendants instead produced affidavits containing a speculative list of

7

possible witnesses and predictions about what their testimony might be.[5] Hutko Decl. ¶10-11. Defendants ignore that GHJ's witnesses are likely to come from Texas and elsewhere.

Additionally, in today's world, a large amount of the information generated by companies (large and small) is stored digitally, making it as easy to produce and review documents in Texarkana, Texas as in Hanover Park, Illinois. *See Sipco, LLC v. Control4 Corp.*, Civ. No. 6:10-cv-249-LED-JDL, 2011 WL 529336, at *2 (E.D. Tex. Feb. 8, 2011).

    5. *Availability and Cost of Compulsory Process (Private Interest)*

As with the Defendants' argument about witnesses, their argument about the availability and cost of compulsory process fails by their admission that non-party witnesses are located across at least three states. *See* Dkt. 5 at 8. Even accepting Defendants' contentions as true, non party witnesses in St. Paul, Minnesota are located 373 miles away from Hanover Park, Illinois. *See* Dkt. 5 at 11. Therefore, these witnesses are not within the 100-mile subpoena power range of the Northern District of Illinois.

And again, Defendants' arguments are premature. Rule 26 disclosures have not occurred and are not yet due. Further, given the nature and scope of the violations associated with the false-marking claims against Defendants, it is likely

---

[5] Defendants are also wrong to assume that all depositions in this case would need to occur in Texas.

there will be multiple witnesses across the country (not just in the state where the Defendants reside) with information about Defendants' advertising, distributing, and selling falsely marked products. For example, Purcell markets, sells, and distributes Pentair products in Arizona, California, and Nevada. *See* Dkt. 5 at 2.

    6.    *All Other Practical Problems (Private Interest)*

In weighing all the factors, this Court has recognized the congressional policy of giving deference to a §292 relator's choice of venue to ensure that "any person" may file suit for violations of section 292. 35 U.S.C. §292(b); *Tex. Data Co.*, 2011 WL 98283, at *9. If courts were to reflexively transfer false-marking cases to a defendant's choice of venue, only those persons who lived in the defendant's place of business (or those with extensive resources) could bring suit – not "any person." The offices of GHJ Holdings are in Texarkana, and two of GHJ's three LLC members live in close proximity to the Eastern District of Texas (with one living in Tulsa, Oklahoma and the other in Austin, Texas).

The place of the alleged wrong is also relevant. *In re Horseshoe Entertainment*, 337 F.3d 429, 435 (5th Cir. 2003). Defendants suggest that the place of the alleged wrong is in the Northern District of Illinois and that it has no other connection to Texas. That claim is incredible given that it has numerous distributors of its products throughout Texas. Because Defendants advertised and sold falsely marked products throughout the United States and placed those

products into the stream of commerce, the Eastern District of Texas is one of the places of the alleged wrong. *See Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302-03 (Fed. Cir. 2009) (explaining the purpose of §292 is to create a deterrent against companies falsely marking their products and putting them into the stream of commerce).

## IV.
### CONCLUSION AND PRAYER

Because Defendants have failed to prove that the Northern District of Illinois is clearly more convenient than the Eastern District of Texas, GHJ Holdings respectfully asks the Court to deny Defendants' motion to transfer venue.

Dated: April 1, 2011                    Respectfully submitted,

                                                /s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  randall@glgnow.com
Christopher Johns
  Texas Bar No. 24044849
  chris.johns@glgnow.com
Christopher A. Honea
  Texas Bar No. 24059967
  chris.honea@glgnow.com
GARTEISER LAW GROUP, P.C.
44 North San Pedro Road
San Rafael, California 94903
[Tel.] (415) 785-3762
[Fax] (415) 785-3805

**ATTORNEYS FOR GHJ HOLDINGS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2011, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

/s/ Randall Garteiser

Randall T. Garteiser
